**IN THE MATTER OF THE PROCEEDINGS TO COMPEL THE ATTENDANCE OF MAY FITIAUSI AS A WITNESS IN CRIMINAL PROSECUTION IN THE STATE OF HAWAII.**

High Court of American Samoa
Trial Division

CA No. 140-95

November 6, 1995

Before KRUSE, Chief Justice.

Order Denying Ex Parte Application for Order Directing May Fitiausi to Appear in High Court:

## I. Introduction

On November 3, 1995, Assistant Attorney General Frederick J. O'Brien filed an *ex parte* application with this court asking that we arrest May Fitiausi and compel her attendance as a material witness in a criminal trial in Hawaii. His application was based upon an underlying certificate of request signed by Judge Marie N. Milks of the First Circuit Court of Hawaii dated October 18, 1995. For the reasons stated below, I must deny the application.

## II. Facts

Robert Earl Garner has been charged with attempted murder in the second degree, attempted sexual assault in the first degree, place to keep pistol or revolver, and terroristic threatening in the first degree in the First Circuit Court of Hawaii. He is scheduled to stand trial on November 13, 1995. The following facts are set forth in the government's application to this court.

The charges against Garner have arisen from two incidents involving his former girlfriend, May Fitiausi. Fitiausi and Garner lived together in Hawaii for over two years. In June 1994, Fitiausi expressed her intention to end the relationship and reunite with her husband in American Samoa.

On September 9, 1994, Garner and Fitiausi met to discuss their breakup. She stated that she wanted the relationship to end. He indicated that he wanted to engage in sexual relations with her. When she refused his advances, he brandished a .25 caliber semi-automatic firearm and threatened her.

On September 23, 1994, Fitiausi went to Garner's house to retrieve some of her belongings. They discussed their relationship, and she again told him it was over. Garner became angry with her, and, as before, stated his desire to engage in sexual relations with her. She again refused his advances. Garner forced her on the bed, where he attempted to sexually

72

assault her. Fitiausi screamed and yelled for help. Garner told her to stop screaming, but she did not comply. Garner then grabbed a knife from a nearby table and slashed Fitiausi's throat. The wound measured 5 to 6 inches in length and was 1-1/2 inches deep. It narrowly missed the carotid artery.

Trial was set for October 16, 1995. On October 2, 1995, Fitiausi was subpoenaed to appear at that trial. She never appeared. The Hawaiian investigator learned that she had fled Hawaii for American Samoa on the date she was served. He also discovered her address and phone number and contacted her. She indicated that she would not return to Hawaii to testify, even if the government paid her travel and *per diem* expenses.

A request has been made to this court to compel Fitiausi's attendance for the trial in Hawaii.

## III. Discussion

Hawaii has adopted the Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings ("Uniform Act"). *See* Haw. Rev. Stat. ch. 836 (1993). The statute is meant to represent a reciprocal agreement between states and territories for the extradition of uncooperative witnesses to testify in criminal trials. The relevant portion of the law reads as follows:

> If a person in any [territory],[1] which by its laws has made provision for commanding persons within its borders to attend and testify in criminal prosecutions . . . in this State [Hawaii], is a material witness in a prosecution pending in a court of record in this State, . . . a judge of such court may issue a certificate under the seal of the court stating these facts and specifying the number of days the witness will be required. The certificate may include a recommendation that the witness be taken into immediate custody and delivered to an officer of this State to assure the witness' attendance in this State. This certificate shall be presented to a judge of a court of record in the judicial district in which the witness is found.

---

[1] The word "state," which has been replaced in this excerpt, is defined as "any state, territory, or possession of the United States." *Id.* at § 836-1. It is assumed for this order that this definition encompasses American Samoa.

73

*Id.* at § 836-3. The statute goes on to provide that Hawaii will pay the witness' travel expenses, as well as *per diem* living expenses. A person who fails to appear under an appropriate order is chargeable under Hawaii law.

■ A reading of the statute shows that there are two requirements for the extradition of a witness: (1) the territory of which the request is made must have a reciprocal provision for "commanding persons within its borders to attend and testify in criminal prosecutions . . . in [Hawaii]"; and (2) the witness requested must be "material." *Id.*; *see Arizona v. Brady*, 594 P.2d 94, 96 (1979) (interpreting the Uniform Act). The second requirement, the materiality of the witness, is clearly met. The first requirement, however, has not been met.

Hawaii acknowledges that American Samoa, unlike many of the states, has not adopted the Uniform Act. It also acknowledges that American Samoa has no analogous provision for extraditing material witnesses to other jurisdictions or for securing witnesses in foreign jurisdictions to testify here. Nevertheless, Hawaii has developed a complicated and circuitous argument that American Samoa is subject to federal law which satisfies the requirements of the Uniform Act.

The argument proceeds in two parts. First, Hawaii argues that A.S.C.A. § 46.0501 makes the federal law concerning detention of material witnesses, 18 U.S.C.S. § 3144 (Law. Co-Op. 1993), applicable in American Samoa. Second, Hawaii argues that 18 U.S.C.S. § 3144, applied in American Samoa, satisfies the first requirement of the Uniform Act. Both of these contentions are flawed.

■ First, A.S.C.A. § 46.0501 does not make 18 U.S.C.S § 3144 applicable here. Section 46.0501 reads:

> Except as otherwise provided in this Code, or by rules
> adopted by the Chief Justice, the criminal procedure in
> the High Court and in the district courts shall conform
> as nearly as may be practical to the *Federal Rules of
> Criminal Procedure.*

A.S.C.A. § 46.0501 (1992) (emphasis added). Section 46.0501 brings our criminal procedure into conformance with the Federal Rules of Criminal Procedure, *not* with every rule of criminal procedure applicable in the federal courts. The term "Federal Rules of Criminal Procedure" refers specifically to the 68 rules which go by that title. *See* Fed. R. Crim. P. 60 ("These rules may be known and cited as the Federal Rules of Criminal Procedure."). 18 U.S.C.S. § 3144, while a rule of criminal procedure applicable to federal courts, is not part of the Federal Rules of

Criminal Procedure. Therefore, § 46.0501 does not make 18 U.S.C.S. § 3144 applicable to the Territory.

Second, even if 18 U.S.C.S. § 3144 applied here, nothing in its terms satisfies the requirements of the Uniform Act. The Uniform Act requires a reciprocal statute providing for the extradition of material witnesses to another jurisdiction. 18 U.S.C.S. § 3144 only provides for the taking of witnesses into custody who may not be practically compelled to testify by subpoena. It reads, in full:

> If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title. No material witness may be detained because of inability to comply with any condition of release if the testimony of such witness can adequately be secured by deposition, and if further detention is not necessary to prevent a failure of justice. Release of a material witness may be delayed for a reasonable period of time until the deposition of the witness can be taken pursuant to the Federal Rules of Criminal Procedure.

18 U.S.C.S. § 3144 (Law. Co-Op. 1993). There is nothing in the statute concerning extradition of witnesses, and Hawaii has cited no authority that the statute is to be interpreted to include such. Thus, even if 18 U.S.C.S. § 3144 applied here, which it does not, it would not aid Hawaii in its request.

## IV. Conclusion

■    The Uniform Act to Secure the Attendance of Witnesses from Without a State in Criminal Proceedings seems to be an intelligent law. American Samoa would benefit greatly, as would the other states and territories of the United State, should we adopt it as legislation.[2] However, we have not. Nor have we adopted any similar provision. This court has stated repeatedly that it will not sit as a legislature. Thus,

---

[2]    The Fono has in other contexts provided reciprocal enforcement legislation, as in the adoption of the Uniform Reciprocal Enforcement of Support Act, A.S.C.A. § 42.0401 et seq., the Uniform Enforcement of Foreign Judgments Act, § 43.1701 et seq.,and the Unifrom Criminal Extradition Act, A.S.C.A. § 46.0901 et seq.

although I would strongly recommend that the Legislature of American Samoa consider enacting the Uniform Act, I cannot proceed by judicial fiat as if the Legislature has already enacted it.

Because there is no law in place in American Samoa which satisfies the first of the requirements of the Uniform Act, as enacted in Hawaii, I am compelled to reject the Application for an Order Directing May Fitiausi to Appear. I understand that this may cause serious problems for the Hawaiian government in prosecuting Garner. Nevertheless, Ms. Fitiausi has rights which must be protected. I am compelled to follow the law applicable here which protects those rights.

The application is DENIED.

It is so ordered.